IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JEFFREY SCOTT CLEGG, #276457,)
                                   )
        Plaintiff,             )
                                   )
    v.                    ) CIVIL ACT NO. 2:16-CV-66-WHA
                                 )            (WO)
                                 )
CASSANDRA CARLTON,      )
                                 )
        Defendant.          )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Jeffrey Scott Clegg, a former state inmate, challenging the constitutionality of a disciplinary imposed upon him during a prior term of incarceration at the Bullock Correctional Facility.  Specifically, Clegg alleges defendant Carlton, the disciplinary hearing officer, denied him due process in a disciplinary hearing conducted on a charge for failure to obey a direct order.  Doc. 1 at 4.  Clegg also asserts Carlton relied on false information in finding him guilty of the aforementioned charge.  Doc. 1 at 4.  Clegg seeks a declaratory judgment,

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

injunctive relief and monetary damages for the alleged violations of his constitutional rights.  Doc. 1 at 5; Doc. 30 at 1.

The defendant filed a special report, supplemental special report and relevant evidentiary materials in support of these reports addressing the claims presented by Clegg.   In these reports, the defendant denies acting in violation of Clegg's constitutional rights.

After reviewing the special reports filed by the defendant, the court issued an order on March 7, 2016 directing Clegg to file a response, supported by affidavits or statements made under penalty of perjury and other evidentiary materials, to each of the arguments set forth by the defendant in her reports,.  Doc. 18 at 2.  The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law."  Doc. 18 at 3 (emphasis in original).  In compliance with this order, Clegg

filed a response (Doc. 22) and affidavit (Doc. 23) in opposition to the defendants'
special reports.

Pursuant to the directives of the order entered on March 7, 2016, the court
now treats the defendant's reports as a motion for summary judgment and
concludes that summary judgment is due to be granted in favor of the defendant.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show
there is no genuine [dispute] as to any material fact and that the moving party is
entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*,
498 F.3d 1258, 1263 (11th Cir. 2007); Rule 56(a), Fed.R.Civ.P. ("The court shall
grant summary judgment if the movant shows that there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a matter of law.").  The
party moving for summary judgment "always bears the initial responsibility of
informing the district court of the basis for its motion, and identifying those
portions of the [record, including pleadings, discovery materials and affidavits],
which it believes demonstrate the absence of a genuine issue [dispute] of material
fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Beard v. Banks*, 548
U.S. 521, 529 (2006) (holding that a court "must examine the record to see whether

3

the [party moving for summary judgment], in depositions, answers to interrogatories, admissions, affidavits and the like, has demonstrated the absence of a genuine [dispute] of material fact, and his entitlement to judgment as a matter of law.") (internal citations and quotation marks omitted); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial).   The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

When the moving party meets its evidentiary burden, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.   At this juncture, the court "must determine whether [the plaintiff], who bears the burden of persuasion, has by affidavits or as otherwise provided in Rule 56 . . . set forth specific facts showing that there is a genuine [dispute of material fact] for trial."  *Beard*, 521 U.S. at 529

(internal citations and quotation marks omitted); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when a party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in substantial evidence to pose a jury question."  *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011).

> [This court] recognize[s] that at this stage [it] must draw "all justifiable inferences in [the plaintiff's] favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). In doing so, however, we must distinguish between evidence
of disputed facts and disputed matters of professional judgment. In
respect to the latter, our inferences must accord deference to the views
of prison authorities. *Overton [v. Bazetta*, 539 U.S. 126, 132 (2003)].
Unless a prisoner can point to sufficient evidence regarding such
issues of judgment to allow him to prevail on the merits, he cannot
prevail at the summary judgment stage.

*Beard*, 548 U.S. at 530.

Although factual inferences must be viewed in a light most favorable to the

plaintiff and *pro se* complaints are entitled to liberal interpretation, a pro se litigant

does not escape the burden of establishing by sufficient evidence a genuine dispute

of material fact. *See Beard*, 548 U.S. at 525; *McKeithen v. Jackson*, 606 F. App'x

937, 938 (11th Cir. 2015); *Ivory v. Warden*, 600 F. App'x 670, 675 (2015). Thus,

Clegg's pro se status alone does not compel this court to disregard elementary

principles of production and proof in a civil case.

## III. ABSOLUTE IMMUNITY

To the extent Clegg lodges claims against defendant Carlton in her official

capacity and seeks monetary damages, Carlton is entitled to absolute immunity.

Official capacity lawsuits are "in all respects other than name, . . . treated as a suit

against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).

"[T]he Eleventh Amendment prohibits federal courts from
entertaining suits by private parties against States and their agencies
[or employees]." *Alabama v. Pugh*, 438 U.S. 781, 781, 98 S.Ct. 3057,

> 57 L.Ed.2d 1114 (1978).  There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 131 S.Ct. 1632, 1637–38, 179 L.Ed.2d 675 (2011). "A State's consent to suit must be 'unequivocally expressed' in the text of [a] relevant statute." *Sossamon v. Texas*, 563 U.S. 277, 131 S.Ct. 1651, 1658, 179 L.Ed.2d 700 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). "Waiver may not be implied." *Id.*  Likewise, "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 786, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)).

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015).  Thus, a state official may not be sued in her official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit. *Pugh,* 438 U.S. at 782, 98 S.Ct. 3057 (citing Ala. Const. art. I, § 14.)

*Selensky*, 619 F. App'x at 849.  "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F.

App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, the defendant is entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from her in her official capacity. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

## IV. DISCUSSION

### A. Relevant Facts and Claims

On December 9, 2015, Officer Kelvin Maloy initiated disciplinary action against Clegg for a violation of Rule #925 — failure to comply with a direct order. Doc. 9-1 at 2, ¶3. Officer Maloy charged that on this date "inmate Jeffrey Clegg . . . [was] given several direct orders from [myself] to stop talking aggressively to DON [Director of Nursing] Dorothy Price. [Clegg] failed to comply with the orders given." Doc. 9-1 at 2, ¶4. Officer Emmitt L. Martin served Clegg with notice of the disciplinary charge and the scheduled date for the disciplinary hearing

related to this charge.  Doc. 9-1 at 2, ¶5.  Clegg refused to sign the document acknowledging receipt of service of the disciplinary and did not identify any witnesses at this time.  Doc. 9-1 at 2, ¶¶5–7.  Defendant Carlton did not call witnesses on Clegg's behalf because Clegg failed to identify any witness at the time of service of the disciplinary and, due to this failure, Carlton deemed calling witnesses not applicable.  Doc. 9-1 at 2, ¶¶6–7; Doc. 9-1 at 3 ¶16.

During the disciplinary hearing, Carlton provided Clegg the opportunity to question Officer Maloy and allowed him to present testimony on his own behalf. Doc. 9-1 at 2–3.  Clegg testified to the general circumstances surrounding the incident but did not mention receiving or refusing an order from Officer Maloy. Doc. 9-1 at 2 ¶14.  Officer Maloy, however, testified that he gave Clegg "several orders . . . to stop talking aggressively towards DON Dorothy Price and [Clegg] failed to comply with the orders that [were] given."  Doc. 9-1 at 2, ¶13.

Upon completion of the noticed disciplinary hearing and after considering all of the testimony, Carlton adjudged Clegg guilty of the charged offense.  Doc. 9-1 at 3, ¶17.  Carlton found that "[o]n December 9, 2015, at approximately 9:15 am, inmate Jeffrey Clegg . . . did not comply with several direct orders from Officer Kelvin Maloy to stop talking aggressively to DON Dorothy Price[.]"  Doc. 9-1 at 3, ¶17.  Carlton advised that she based her findings of fact on the sworn testimony

of the arresting officer.  Doc. 9-1 at 3, ¶18.  The sanctions imposed upon Clegg for this disciplinary infraction consisted of confinement in disciplinary segregation for forty-five days and loss of canteen, telephone and visitation privileges for the same period of time.  Doc. 9-1 at 3, ¶ 20.

Clegg contends the disciplinary hearing violated his rights to due process because the hearing officer did not call Nurse Price as a witness per his verbal request made immediately prior to the start of the hearing despite the arresting officer identifying Nurse Price as the victim of Clegg's aggressive comments. Doc. 9-1 at 2, ¶3.  However, at the time of service of the disciplinary charge Clegg was fully aware of Nurse Price's potential to serve as witness but chose not to list her as a witness.  Clegg also asserts Officer Maloy provided false information in charging him with failing to obey a direct order and when providing his testimony which the hearing officer relied on to find him guilty.  Doc. 1 at 4.

## B.  Due Process

As explained by the Eleventh Circuit, the Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required.

> The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.

> *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132
> L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93,
> 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a
> prisoner is entitled to due process prior to being transferred to a
> mental hospital).  The second is when the state has consistently given
> a certain benefit to prisoners (for instance, via statute or
> administrative policy), and the deprivation of that benefit "imposes
> atypical and significant hardship on the inmate in relation to the
> ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct.
> at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct.
> 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of
> statutory "good-time credits" without due process); *cf. Dudley v.
> Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the
> state creates liberty interests).  In the first situation, the liberty interest
> exists apart from the state; in the second situation, the liberty interest
> is created by the state.

*Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

"Generally, atypical and significant hardships must exist for a significant period of time [to give rise to a liberty interest]."  *Smith v. Deemer*, 641 F. App'x 865, 868 (11th Cir. 2016).    Thus, temporary confinement of an inmate in disciplinary segregation does not implicate a constitutionally protected liberty interest.  *Sandin*, 515 U.S. at 485–86; (concluding that thirty days of disciplinary segregation does not give rise to a protected liberty interest); *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (holding that confinement in segregation for two months did not deprive inmate of a constitutionally protected liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [inmate]

suffered because of his disciplinary conviction (demotion in status, [two months in] segregation, and transfer) raise no due process concerns."). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). A temporary denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. Thus, the deprivations imposed upon Clegg based on the challenged disciplinary did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*. This court must therefore determine whether the actions about which Clegg complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court opined,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct.

864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293.   In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293.   For these reasons, we abrogated the methodology of parsing the language of particular regulations.

"[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause.   The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.   But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

Clegg's confinement in disciplinary segregation for forty-five days did not deprive him of any protected liberty interest.  *Sandin*, 515 U.S. at 486; *Rodgers*, 142 F.3d at 1253; *Hoskins*, 395 F.3d at 375.

With respect to [Plaintiff's] loss of canteen, telephone, and visiting privileges, a liberty interest is not implicated either under the Constitution or by the State's creation. The Court finds the Constitution does not grant an inmate a right in visitation, canteen, and telephone privileges. *See Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); *Overton v. Bazzetta*, 539 U.S. 126, 131, 134, 123 S.Ct. 2162, 2167, 2168, 156 L.Ed.2d 162 (2003) (upholding a two-year restriction on visitation privileges for two substance abuse violations because prison confinement requires the surrendering of liberties and privileges enjoyed by other citizens, with free association being least compatible right to prison confinement); *Charriez v. Sec'y, Fla. Dep't of Corrs.*, 596 F. App'x 890, 894 (11th Cir. 2015) (unpublished) (finding that the one-year loss of visitation privileges did not implicate a state-created liberty interest as there was no right to unfettered visitation); *Moore v. Pemberton*, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as part of his disciplinary punishment a two-week loss of commissary privileges); *Walker v. Loman*, CA 06–0896–WKW, 2006 WL 3327663, at *1, *3 (M.D. Ala. Nov. 15, 2006) (unpublished) (holding the 90-day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest). Moreover, the Alabama courts have determined a prisoner does not have a state-created liberty interest in store, telephone, and visitation privileges. *Dumas v. State*, 675 So.2d 87, 88 (Ala.Crim.App.1995).

An inmate's ability to visit, to shop, and to use the telephone is heavily restricted while in prison, as are most aspects of an inmate's life. *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301. The further restriction of these privileges for a short period of time is a less severe punishment than confinement to disciplinary segregation. Such restriction is not "atypical," nor is it a "significant hardship" under the *Sandin* analysis, and is a type of discipline that should be expected by a prisoner as an incident to his criminal sentence. *See Id*. at 475, 485, 115 S.Ct. at 2296, 2301. Thus, [Plaintiff] does not have a liberty

14

interest in canteen, visitation, and telephone privileges to which due process attaches.

*Bass v. Wilson, et al.*, 2015 WL 4742473, at *5–*6 (S.D. Ala. Aug. 10, 2015).

Applying the *Sandin* inquiry, short-term confinement in segregation and temporary loss of canteen, telephone and visitation privileges for forty-five days "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon Clegg. *Id.* at 485.  In light of the foregoing, the court concludes that the sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.  Thus, due process did not attach to the disciplinary proceeding imposed upon Clegg, and summary judgment is therefore due to be granted in favor of the defendant on this claim.

### C.  False Information

Clegg contends that defendant Carlton relied on false information in finding him guilty of the disciplinary charge.  Doc. 1 at 4.  Defendant Carlton denies reliance on false information and, instead, avers "she believed Officer Maloy's testimony which was taken under oath to be true."  Doc. 17-1 at 2.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on ***admittedly false information*** to deny a prisoner consideration for

15

parole was arbitrary and capricious treatment violative of the Constitution.   The appellate court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*.  In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole.   *Slocum*, 678 F.2d at 941.   The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors.   Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information.   We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration.   *Id.* at 942.   We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files.   *Id.*   In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender.   As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.2d at 1442.   *Slocum* controls the disposition of the instant false information claim.

Defendant Carlton maintains that the testimony of the arresting officer on which she relied to adjudge Clegg guilty of the disciplinary charge is true and that reliance on this information did not infringe on any of Clegg's constitutional rights. Of specific importance, there is no admission by the defendant that the information utilized in the determination of guilt is false.  Clegg has failed to come forward with any evidence which indicates the defendant knowingly relied on false information during the disciplinary process.   Moreover, Clegg's conclusory assertion regarding the potential use of false information does nothing more than raise the possibility that information in his records may be false and this mere possibility fails to provide a basis for relief.  *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001) (holding that "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

The record before the court establishes that the defendant did not rely on admittedly false information in finding Clegg guilty of failing to obey a direct order.   Consequently, Clegg is entitled to no relief as a matter of law and entry of summary judgment in favor of the defendant is therefore appropriate.

### D.  Violation of Internal Administrative Regulation

Insofar as Clegg alleges the defendant violated the internal administrative regulation governing disciplinary hearings, he is entitled to no relief.  The law is well-settled that infringements of agency rules, regulations or procedures do not, without more, amount to constitutional violations.  *Sandin*, 515 U.S. at 484-486; *Magluta v. Samples,* 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (holding mere fact governmental agency's regulations or procedures may have been violated does not, standing alone, raise a constitutional issue). For these reasons, the defendant is entitled to summary judgment on Clegg's claim alleging violation of an administrative regulation.

### E.  Double Jeopardy

Clegg complains that two disciplinary charges, i.e., failure to obey a direct order and assault on correctional personnel, arose from the incident with officer Maloy on December 9, 2015.  Doc. 1 at 4.  To the extent Clegg raises a double jeopardy claim, he is entitled to no relief.

The Supreme Court has consistently held that "the Double Jeopardy Clause provides three related protections with respect to criminal proceedings:  'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction.  And it protects against

multiple punishments for the same offense.'"   *United States v. Wilson*, 420 U.S. 332, 343 (1975) (internal citation omitted).

> The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, "'in common parlance,'" be described as punishment. *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549, 63 S.Ct. 379, 387, 87 L.Ed. 443 (1943) (quoting *Moore v. Illinois*, 14 How. 13, 19, 14 L.Ed. 306 (1852)). The Clause protects only against the imposition of multiple ***criminal*** punishments for the same offense, *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938); *see also Hess*, supra, at 548-549, 63 S.Ct., at 386–387 ("Only" "criminal punishment" "subject[s] the defendant to 'jeopardy' within the constitutional meaning"); *Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) ("In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution"), and then only when such occurs in successive [criminal] proceedings, *see Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983).

*Hudson v. United States*, 522 U.S. 93, 98–99 (1997) (emphasis in original). The Double Jeopardy Clause does not apply to proceedings that are not "essentially criminal." *Breed*, 421 U.S. at 528.

Prison disciplinary hearings are not criminal proceedings to which the protection against double jeopardy applies. *Tedesco v. Secretary for Dept. Of Corrections,* 190 Fed.Appx. 752, 757 (11th Cir. 2006).; *Butler v. McDonough*, 2007 WL 2071530, *8 (M.D. Fla. 2007) (finding that protections afforded by the Double Jeopardy Clause "apply to criminal trials, not disciplinary hearings[.]");

*see United States v. Mayes*, 158 F.3d 1215, 1224 (11th Cir. 1998) (In a double jeopardy challenge by federal prisoners to criminal charges based on the same offense conduct underlying prior prison disciplinary sanctions, the Eleventh Circuit held that when "[p]rison officials merely implement disciplinary proceedings that . . . at most, change the conditions of the inmates' confinement for purposes of maintaining institutional order and encouraging compliance with prison rules[,]" the disciplinary proceedings are not "criminal" and, therefore, prisoners' double jeopardy challenges to their subsequent criminal prosecutions provide no basis for relief.).   Moreover, although the disciplinary charges for failure to obey a direct order and assault on correctional officials may have arisen from the same set of facts and circumstances, these charges constitute two separate offenses requiring completely different elements of proof and, as such, do not implicate double jeopardy. *Blockburger v. United States*, 284 U.S. 299, 304 (1932).   Consequently, Clegg has failed to state a cognizable claim with respect to a violation of the Fifth Amendment's protection against double jeopardy and this claim therefore provides no basis for relief in this cause of action.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      The defendant's motion for summary judgment be GRANTED.

2.      Judgment be GRANTED in favor of the defendant.

3.      This case be DISMISSED with prejudice.

4.      Costs be taxed against the plaintiff.

On or before **November 6, 2018**, the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done this 23rd day of October, 2018.

/s/Charles S. Coody

CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE